**BUCHALTER**
A Professional Corporation
J. Rick Taché (SBN: 195100)
Kari L. Barnes (SBN: 253640)
Roger L. Scott (SBN: 247165)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone:  949.760.1121
Facsimile:   949.720.0182
E-mail:   rtaché@buchalter.com
            kbarnes@buchalter.com
            rscott@buchalter.com

Attorneys for Defendants,
AMP Plus, Inc. doing business as
ELCO Lighting and ELCO Lighting, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DMF, INC. a California Corporation,<br><br>              Plaintiff,<br><br>v.<br><br>AMP PLUS, INC. d/b/a ELCO LIGHTING, a California Corporation; ELCO LIGHTING, INC., a California corporation;<br><br>              Defendants. | Case No. 2:19-cv-4519-CAS-GJSx<br><br>**DEFENDANTS AMP PLUS, INC. D/B/A ELCO LIGHTING AND ELCO LIGHTING, INC.'S NOTICE OF MOTION AND MOTION TO ENFORCE SETTLEMENT AGREEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><u>**REDACTED**</u><br><br>DATE:    April 26, 2021<br>TIME:    10:00 a.m.<br>CTRM:    8D<br><br> Judge: Hon. Christina A. Snyder |

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT**
BN 42666162v2BN 44967830v1

Case No. 2:18-cv-007090-CAS-GJS

TO THE COURT, PLAINTIFF AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on April 26, 2021, at 10:00 a.m. in Courtroom 8D of the above-captioned court, located at 350 W. First Street, Los Angeles, CA 90012, Defendants AMP Plus, Inc. and ELCO Lighting, Inc. (collectively "ELCO") will and hereby do move this Court for an order enforcing the terms of the settlement agreement executed between they and Plaintiff DMF, Inc. ("DMF") on or about January 20, 2021.

This motion is brought on the grounds that DMF has refused to comply with the terms of the executed settlement agreement ("Settlement Agreement") between the parties by (i) obstructing the Audit required to be conducted under the Settlement Agreement, (ii) attempting to re-negotiate the Settlement Agreement by claiming it includes provisions the parties expressly agreed were not included and (iii) attempting to use the Audit as a vehicle to verify ELCO's extra-contractual statements, even though the Settlement Agreement plainly states that the Audit's sole purpose is to verify statements made pursuant to the Settlement Agreement. The executed Settlement Agreement expressly states that the Court shall retain jurisdiction over the action for the purposes of enforcing the Settlement Agreement.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place via email on March 16, 18, and 19, 2021. Furthermore, this Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of J. Rick Taché filed concurrently herewith, the document attached to the concurrently filed Application to File Documents Under Seal, all of the pleadings, records, and documents on file in

1

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

1    this action, and such additional written and oral argument as may be presented prior

2    to or at the hearing on this Motion.

3    DATED:  March 29, 2021                    BUCHALTER
                                               A Professional Corporation
4

5                                              By:  */s/ J. Rick Taché*
                                                    J. Rick Taché
6                                                   Kari L. Barnes
                                                    Roger L. Scott
7
                                               Attorneys for Defendants
8                                              AMP Plus, Inc. doing business as ELCO
                                               Lighting and ELCO Lighting, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS .................................................... 3

       A.    The Parties Negotiate a Settlement ........................... 3

       B.    The Parties Agree To Exclude An Audit Of Inventory Of Version 1-3 Products ........................... 4

       C.    The Executed Settlement Agreement Reflects The Parties' Intent To (i) Count Inventory Only for Version 4 Products, and (ii) Verify Only Statements Made In, or Required By, The Settlement Agreement ........................... 5

       D.    DMF Attempts to Renegotiate The Settlement By Misleading the Auditor as to the Parties' Intent ........................... 7

       E.    DMF Unilaterally Terminates the Auditor, and Demands ELCO Agree to a New One, Without Addressing the Parties' Differing Understanding Of The Settlement Agreement ........................... 10

III.   ARGUMENT ................................................................. 10

       A.    The Court Is Authorized to Enforce the Settlement Agreement ........................... 10

       B.    The Settlement Agreement, On Its Face, Is Limited To An Audit of Sales of Version 1-3 Inventory, and Verification of ELCO's Statements Required Under The Settlement Agreement ........................... 11

             1.    The Settlement Agreement provides for an audit only of sales of Version 1-3 products ................................. 12

             2.    The Settlement Agreement is limited to verification of statements required by the Settlement Agreement itself ......... 13

       C.    Extrinsic Evidence Supports ELCO's Interpretation of the Settlement Agreement ........................... 14

       D.    The Court May Sever Audit Phase II In Order to Preserve the Agreement ........................... 16

       E.    DMF's Obstruction Of the Audit Constitutes a Breach of the Agreement or, at a Minimum, a Breach of the Implied Covenant of Good Faith and Fair Dealing ........................... 17

IV.    CONCLUSION ................................................................. 18

i

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Callie v. Near*,
   829 F.2d 888 (9th Cir.1987) .......................................................................... 10,11

*Cedars–Sinai Med. Ctr. v. Shewry*,
   137 Cal.App.4th 964 (2006) ........................................................................ 12, 15

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
   43 Cal. 4th 375 (2008) ..................................................................................... 15

*Cty. Of Marin v. Assessment Appeals Bd. Of Marin Cty.*,
   64 Cal. App. 3d 319 (1976) ............................................................................. 12

*DMF, Inc. v. AMP Plus, Inc., et al*,
   No. 18-cv-07090-CAS-GJS ................................................................................ 3

*Harrop v. Western Airlines, Inc.*,
   550 F.2d 1143 (9th Cir.1977) .......................................................................... 11

*Locke v. Warner Bros.*,
   57 Cal. App. 4th 354 (1997) ............................................................................ 17

*Maffei v. N. Ins. Co.*,
   12 F.3d 898 (9th Cir.1993) .............................................................................. 15

*Maynard v. City of San Jose*,
   37 F.3d 1396 (9th Cir.1994) ............................................................................ 11

*Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*,
   338 F. Supp. 3d 1063 (E.D. Cal. 2018) ...................................................... 12, 16

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*,
   69 Cal.2d 33, 69 Cal.Rptr. 561, 442 P.2d 641 (1968) ..................................... 15

*Parsons v. Bristol Dev. Co.*,
   62 Cal. 2d 861 (1965) ...................................................................................... 15

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
   641 F. Supp. 2d 913 (N.D. Cal. 2009) ............................................................. 17

ii

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

*Reserve Ins. Co. v. Pisciotta*,
   30 Cal. 3d 800 (1982) ................................................................................... 15

*Schoolcraft v. Ross*,
   81 Cal. App. 3d 75 (1978) ............................................................................. 18

*Tiger Bay Vill. Corp. v. Yihe Corp.*,
   No. CV 13-08837-RSWL-FFM, 2014 WL 3662259 (C.D. Cal. July
   18, 2014) ...................................................................................................... 11

*TNT Mktg., Inc. v. Agresti*,
   796 F.2d 276 (9th Cir. 1986) ......................................................................... 11

*Union/OSG, LLC v. Zagger*,
   No. CV101502GAFMANX, 2010 WL 11595887 (C.D. Cal. May 6,
   2010) ............................................................................................................ 18

*Winet v. Price*,
   4 Cal.App.4th 1159, 6 Cal.Rptr.2d 554 (1992) ............................................. 15

*Wolf v. Superior Court*,
   114 Cal.App.4th 1343, 8 Cal.Rptr.3d 649 (2004) ......................................... 15

*Young v. Wideawake Death Row Ent. LLC*,
   No. CV 10-1019 CAS, 2011 WL 12565250 ........................................... 12, 15

**Statutes**

Cal. Civ. Code §1638 .......................................................................................... 12

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants AMP Plus Lighting, Inc. dba ELCO Lighting and ELCO Lighting, Inc. (collectively "ELCO") are forced to bring this motion because Plaintiff DMF, Inc. ("DMF") has refused to comply with the plain language of the Settlement Agreement in this matter.  During the course of settlement negotiations, DMF insisted that ELCO make representations in the Settlement Agreement itself regarding certain sales and inventory numbers, and submit to an independent audit conducted by a mutually selected auditor to verify those representations.  The Settlement Agreement expressly states that the audit is limited to verifying ELCO's statements required as part of the settlement itself.

Initially, DMF demanded that, as part of Audit Phase I, ELCO make representations, and the auditor verify, the sales *and inventory* of Version 1-3 products, as well as sales and inventory of Version 4 products.  However, during the course of negotiations, the parties mutually agreed to limit the representations and audit of Version 1-3 products to *sales only*, removing any requirement that inventory of those products be audited.  ELCO is then required to declare that any remaining inventory is to be destroyed, and the Auditor is to verify that statement in Audit Phase II.

Once the parties retained an auditor, DMF immediately attempted to renegotiate these key settlement terms.  Ignoring that the parties had agreed to remove an audit of the inventory of Version 1-3 products, DMF informed auditor that even though no *express* requirement to audit Version 1-3 product inventory existed, such an audit it was somehow *implied* in the contract language.  Further ignoring that the audit is limited to verification of ELCO's statements in the settlement, DMF claimed the auditor was permitted to verify statements ELCO had made in discovery, apparently for use in the related utility patent case.

1

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

ELCO objected, cited the plain language of the Settlement Agreement, and asked that the audit proceed as written.  However, faced with a disagreement between the parties, the auditor stated that she could only complete the part of the audit over which there was no dispute.  ELCO agreed, and asked that the auditor proceed with that portion.

DMF refused.  DMF then purported unilaterally to fire the auditor and select a new one, apparently intending to shop for auditors until it finds one that will accept its unsupported interpretation of the audit.

Assuming, for the sake of argument, that DMF is acting in good faith, its "solution" does not resolve the underlying problem:  the parties have two dramatically different interpretations of the same language in the Settlement Agreement.  The Court, not an auditor unilaterally selected by DMF, must resolve that dispute.

For the reasons set forth below, ELCO respectfully requests that the Court find that:

(i) Sections 6 and 7 of the Settlement Agreement do not require or permit an audit of inventory of Version 1-3 products,

(ii) Sections 6 and 7 of the Settlement Agreement permit only the verification of ELCO's statements in the Settlement Agreement or the Declaration required by Section 7, and that DMF may not seek verification of extra-contractual statements or provide such statements to the Auditor, and

(iii) Order that DMF permit the parties' mutually selected Auditor, Julie Plat, to conduct the Audit in accordance with the Court's interpretation of Sections 6 and 7 of the Settlement Agreement.

In the alternative, pursuant to Section 18 of the Settlement Agreement, in the event the Court cannot interpret the requirements of Sections 6 and 7 in a manner

2

reflecting the original intentions of the parties, ELCO requests that the Court strike the Auditor's requirement to conduct Audit Phase II from Section 7 of the Settlement Agreement and order that the parties' mutually selected Auditor, Julie Plat, proceed as if that provision "had never been contained" in the Settlement Agreement.

## II.   STATEMENT OF FACTS

### A.   The Parties Negotiate a Settlement

In early January 2021, the parties began to discuss settlement of this matter. Declaration of J. Rick Taché ("Taché Decl."), Ex. 1.[1]  DMF's own expert had opined that the potential damages were only $ 20,277.81.  Taché Decl., Ex. 2.at p. 5, ¶ 17. Thus, proceeding to trial was not economically prudent for either DMF or ELCO.

On or about January 15, 2021, the parties reached a tentative settlement premised upon the updated sales numbers of Version 1-4 products represented by ELCO and DMF's expert report on potential damages.  Taché Decl. ¶ 4.  However, DMF did not trust ELCO and demanded that any settlement include specific representations as to ELCO's sales both of Versions 1-3 of the Accused Products (which were subject to this Court's Preliminary Injunction in the related utility patent case[2] and interrogatory and testimonial discovery responses), as well as of Version 4 products, which were not at issue in this or the related utility patent lawsuit.  *Id*.  DMF also required assurances that ELCO would dispose of or destroy all existing inventory of Version 1-4 products.  *Id*.

Rather than re-litigate representations made in discovery, the parties agreed that ELCO would provide updated sales numbers for Version 1-4 products and inventory of Version 4 products *within the Settlement Agreement itself*.  Taché Decl., Ex. 3 (Settlement Agreement), §§ 4, 5.  A mutually selected independent auditor

---

[1] The parties have exchanged in excess of 100 emails regarding the settlement of this case and the dispute giving rise to this motion.  To avoid inundating the court with exhibits, ELCO attaches only the most relevant exhibits and declares the remaining facts.
[2] *DMF, Inc. v. AMP Plus, Inc., et al*, No. 18-cv-07090-CAS-GJS.

("Auditor") would then conduct an audit to confirm ELCO's representations regarding sales numbers. *Id.* § 6. If the Auditor determined ELCO's representations were materially inaccurate, ELCO would be subject to an additional penalty payable to DMF. *Id.*

*After* that portion of the audit, ELCO would then destroy, or otherwise dispose of, all inventory of the Accused Products (i.e. Version 1-3 products) and Version 4 products, and provide a declaration to DMF confirming that it had done so. *Id.* § 7. *After* ELCO had destroyed or otherwise disposed of all inventory of Version 1-4 products and made the required declaration, the Auditor would confirm that ELCO had in fact complied with Section 7 of the Settlement Agreement. *Id.* If the Auditor determined ELCO's representations in the declaration were inaccurate, ELCO would be subject to an additional penalty payable to DMF. *Id.*

**B.     The Parties Agree To Exclude An Audit Of Inventory Of Version 1-3 Products**

Early drafts of the Settlement Agreement included an audit of inventory for Version 1-3 products. Tache Decl. ¶ 6. However, on or about January 19, 2021, the parties agreed that such an audit was not required. *Id.* On January 19, 2021, counsel for DMF circulated a draft of the settlement agreement that failed to account for this change. Tache Decl., Ex. 4. In response, ELCO circulated a revised, redlined draft, stating:

> Attached is a revised (redline) draft of the Settlement Agreement to pick up something missed in Section 6. Since ***we no longer are conducting an audit of the remaining inventory of Version 1-3 products*** prior to closing, the existing language was no longer accurate. As such, we modified the language slightly to pick up this fact.

Tache Decl., Ex. 5 (emphasis added).

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

4

Case No. 2:18-cv-007090-CAS-GJS

The redlined draft attached to ELCO's January 19, 2021 email removed any requirement to audit the inventory of Version 1-3 products.

Tache Decl., Ex. 6.

DMF accepted ELCO's changes, and the executed version of the Settlement Agreement contains language identical to that proposed by ELCO on January 19, 2021. *See*, Tache Decl., Ex. 3 at § 6.

**C.** **The Executed Settlement Agreement Reflects The Parties' Intent To (i) Count Inventory Only for Version 4 Products, and (ii) Verify Only Statements Made In, or Required By, The Settlement Agreement**

In Section 4 of the Settlement Agreement, ELCO makes representations as to the *sales* numbers of Version 1-3 products. Tache Decl., Ex. 3 at §4(a). In Section 5 of the Settlement Agreement, ELCO makes representations as to the *sales and inventory* of Version 4 products. *Id*. at §5(d), (e).

Sections 6 and 7 must be read together. Section 6 explains that the Audit will be conducted in two phases. Section 6 sets forth the general purpose of Audit Phases

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

1   I and II as well as the specific requirements of Audit Phase I.  Section 7 sets forth the

2   requirements for Audit Phase II.



15   *Id*. at § 6 (emphasis added).

25   *Id*. at § 7 (emphasis added).

26      Equally important, the Settlement Agreement states that the purpose of the

27   audit is to verify "

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS



1

2 ." *Id*. at § 6.

3 Audit Phase II is to "

4

5 ." *Id*. at § 7.  Thus,

6 the Auditor is only permitted to verify those specific representations.

7         The Settlement Agreement provides a specific, and relatively short, timetable

8 for the Audit.  *See*, *id*. at § 6 ("

9

10 "); *id*. at §7 ("

11

12 .").  The penalty for failing

13 to conduct a timely audit falls solely on ELCO.   *Id*. at § 6 ("

14

15 .").

16     **D.**     **DMF Attempts to Renegotiate The Settlement By Misleading the**

17          **Auditor as to the Parties' Intent**

18         The parties executed the Settlement Agreement on January 20, 2021.  *See*,

19 Taché Decl., Ex. 3.   Two weeks following the execution of the Settlement

20 Agreement, ELCO had yet to hear from DMF regarding the appointment of an

21 auditor.  Tache Decl. ¶ 10.  On February 5, 2021, in an effort to move the process

22 forward, ELCO wrote to suggest Jeffrey Parsell of Windes, a well-known Southern

23 California auditing firm, as a potential Auditor.  Tache Decl., Ex. 7.  Six days later,

24 on February 11, 2021, DMF rejected ELCO's proposal and suggested Julie Plat, an

25 independently practicing forensic accountant.  *Id*.  ELCO immediately reviewed Ms.

26 Plat's credentials and approved her that same day.  Taché Decl., Ex. 8.

27

28

**DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT**

Case No. 2:18-cv-007090-CAS-GJS

Unfortunately, it quickly became clear that DMF did not intend to permit Ms. Plat to conduct a timely and efficient audit. Instead, DMF sought to renegotiate the Settlement Agreement, attempting to convince Ms. Plat that she was required not only to conduct an audit of Version 1-3 product inventory, but use as the basis for her audit ELCO's extra-contractual statements rather than the statements made in the Settlement Agreement, or the required declaration.

On March 1, 2021, DMF committed its intent to writing, copying Ms. Plat on an email setting forth its claim that—despite the plain language of the Settlement Agreement and the negotiations of the parties—the Settlement Agreement somehow *implied* that Ms. Plat was required to audit the inventory of Version 1-3 products as part of Audit Phase II, and included a litany of extra-contractual statements ELCO had made in litigation regarding inventory. Tache Decl., Ex. 9 ("Rick [Taché] may be correct that Version 1-3 product inventory is not determined at Phase I . . . but ELCO may need to [provide it] in Phase II. Further, as discussed above, documents produced in the design patent case on number of units of Version 1-3 products provide some of this information already, though they ultimately cannot be relied upon by themselves *and will need confirmation*." (emphasis added)).

On March 3, 2021, the parties conducted a conference call with the Auditor in an effort to resolve any dispute over the scope of the audit. Taché Decl. ¶ 14. Unfortunately, DMF insisted on its own interpretation of the Settlement Agreement. *Id*. ELCO explained that DMF's position was not supported by the plain language of the Settlement Agreement and asked that the auditor not adopt DMF's interpretation. *Id*.

Following the March 3, 2021 call, DMF sent a self-serving email purporting to confirm the contents of the call, claiming that it wanted to proceed with the audit (or at least Audit Phase I), and blaming ELCO for any delay. Taché Decl., Ex. 10.[3]

---

[3] Throughout this dispute, DMF has engaged in a practice of demanding telephone calls that are highly contentious and not productive. Taché Decl. ¶ 15. DMF will

8

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

DMF's misstatements were so egregious that even the neutral auditor wryly commented, "There are statements in your email I do not agree with. There are also significant issues we discussed that are not recorded." *Id.*, Ex. 11.

ELCO agreed that DMF's positions were unsupported, but did not believe it was appropriate to involve the Auditor in the parties' dispute. Taché Decl. ¶ 17. Accordingly, ELCO explained that it would respond to DMF separately. Taché Decl., Ex. 12. On March 4, 2021, ELCO wrote DMF to explain why the Settlement Agreement did not permit an audit of Version 1-3 inventory or a verification of extra-contractual statements. *Id.*, Ex. 13. DMF again responded with a self-serving email that again insisted on an audit of Version 1-3 product inventory supported by extra-contractual statements, and again falsely blaming ELCO for the obstruction. *Id.*, Ex. 14.

Over the following days, including another telephone call with the Auditor on March 5, 2021 and through subsequent email0 (some including, and some excluding the Auditor), the parties attempted to reach a resolution. Tache Decl. ¶ 20. But the damage had been done. Without an agreement from the parties, Ms. Plat believed Audit Phase II was too ambiguous for her to complete. *Id.*

On March 10, 2021, ELCO summarized the issue for DMF, explaining "[t]he most critical item arising from the call is Julie [Plat]'s unequivocal statement that she does not understand the description of Audit Phase II contained within the Settlement Agreement and that she is unlikely to perform Audit Phase II. She is, however, prepared to begin work on Audit Phase I. . . . ." Taché Decl., Ex. 15. ELCO asked that DMF confirm that Audit Phase I could proceed. *Id.*

___

then send "confirming" emails that misstate the contents of the call and make unsupported accusations against ELCO and its counsel. *Id.*

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

E.   **DMF Unilaterally Terminates the Auditor, and Demands ELCO Agree to a New One, Without Addressing the Parties' Differing Understanding Of The Settlement Agreement**

Rather than permit the Auditor to at least perform Audit Phase I, DMF responded by purporting unilaterally to terminate the Auditor.  Tache Decl., Ex. 16 ("Ms. Plat explained during our last call that she would not guarantee that she would do Phase 2 of the audit.  Ms. Plat, therefore, suggested that we may want to seek another auditor.  That is what we intend to do.").  Shortly thereafter, DMF notified ELCO that it had, unilaterally, selected a new auditor.  Taché Decl., Ex. 17.

When ELCO sought to meet and confer regarding this motion, DMF's response was to pretend it did not understand ELCO's position and to re-iterate its own position that it was entitled to an audit of version 1-3 products, was permitted to provide extra-contractual statements to the Auditor for verification, and was permitted to unilaterally terminate the Auditor and hire a new one.  Taché Decl., Ex. 18.

Emphasizing that DMF left no room for negotiation, after ELCO confirmed its intent to file this motion, DMF sent a "meet and confer" email for a cross-motion on the exact same issue, claiming that ELCO had breached the Settlement Agreement by refusing to go along with DMF's unsupported interpretation, and was now required to pay for the entire audit.  Taché Decl., Ex. 19.  ELCO replied and explained how DMF's threat of a "me too" motion underscored the need to seek the Court's intervention to resolve this dispute.  *Id*., Ex. 20.

III.   **ARGUMENT**

A.   **The Court Is Authorized to Enforce the Settlement Agreement**

A district court retaining jurisdiction to enforce a settlement agreement has the power to summarily enforce the agreement if the parties do not dispute the contract's binding nature on the parties. *Callie v. Near,* 829 F.2d 888, 890 (9th Cir.1987).  To

be enforced, a settlement agreement must meet two requirements. *Id*. at *2. First, it must be a complete agreement. *Id.* (citing (citing *Maynard v. City of San Jose,* 37 F.3d 1396, 1401 (9th Cir.1994); *Callie,* 829 F.2d at 890)). Second, both parties must have either agreed to the terms of the settlement or authorized their respective counsel to settle the dispute. *Id.* (citing *Harrop v. Western Airlines, Inc.,* 550 F.2d 1143, 1144–45 (9th Cir.1977)). In enforcing a settlement agreement a court can enter judgment ***or order specific performance of the specific terms of an agreement***. *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *Tiger Bay Vill. Corp. v. Yihe Corp.*, No. CV 13-08837-RSWL-FFM, 2014 WL 3662259, at *6 (C.D. Cal. July 18, 2014) (ordering production of financial documents pursuant to terms of settlement agreement).

Here, there is no dispute that the parties entered into a binding Settlement Agreement. The parties executed the Settlement Agreement, which was filed, through counsel, with this Court. *See*, ECF No. 69 (request to file under seal); ECF No. 71 (Order granting). Further, the Court entered the parities' proposed Permanent Injunction and Consent Agreement, which provides that the Court "shall retain jurisdiction over this action for purposes of enforcing the Settlement Agreement, the permanent injunction and judgment entered herein." ECF No. 72 at 10:18-20. Therefore, the parties have consented to the Court retaining jurisdiction during the settlement process, and the Court may order specific performance of the specific terms of Settlement Agreement.

**B.** **The Settlement Agreement, On Its Face, Is Limited To An Audit of Sales of Version 1-3 Inventory, and Verification of ELCO's Statements Required Under The Settlement Agreement**

The Settlement Agreement is governed by California law. Taché Decl., Ex. 3 at §23. "Under California law, '[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.'

11

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

The trial court's goal is to give effect to the parties' mutual intent at the time of contracting.  If the contract is reduced to a writing, the court should attempt to determine the parties' intent from the writing alone, if possible."  *Young v. Wideawake Death Row Ent. LLC*, No. CV 10-1019 CAS JEMX, 2011 WL 12565250, at *3 (C.D. Cal. Apr. 19, 2011) (citing Cal. Civ. Code §1638 and *Cedars–Sinai Med. Ctr. v. Shewry,* 137 Cal.App.4th 964, 979 (2006)).

### 1.     The Settlement Agreement provides for an audit only of sales of Version 1-3 products

DMF desires to read Sections 6 and 7 in isolation, attempting to divine the intent of Section 7, and Audit Phase II, without looking to what is required in Section 6 and Audit Phase I.  This is improper.  "The "intention of the parties must be ascertained from consideration of the entire contract, not some isolated portion." *Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*, 338 F. Supp. 3d 1063, 1072 (E.D. Cal. 2018) ((quoting *Cty. Of Marin v. Assessment Appeals Bd. Of Marin Cty.*, 64 Cal. App. 3d 319, 324-25, (1976)).

Sections 6 and 7, when read together, set forth what the Auditor is supposed to verify, and when she is to verify it.  .  Section 6 explains that the Audit will be conducted in two phases.  Section 6 sets forth the general purpose of Audit Phases I and II as well as the specific requirements of Audit Phase I.  Section 7 sets forth the requirements for Audit Phase II.

In Audit Phase I, "███████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████."  Tache Decl., Ex. 3 at § 6 (emphasis added).

"███████████████████████████████████████████
█████████████████████████████████████████████

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

1 ███████████████████████████████████████████

2 ███████████████████████████████████████████

3 ███████████████████████████████████████████

4 ██████████████████████████████████████ *Id*. at

5 § 7 (emphasis added).

6       Thus, Section 6 sets forth what is to be verified in Audit Phase I:  ELCO's

7 representations in Sections 4 and 5 of the Settlement Agreement, which do not

8 include inventory of Version 1-3 products.  The Auditor does not commence Audit

9 Phase II until *after* ELCO has already destroyed or otherwise disposed of any

10 remaining inventory of Version 1-3 and Version 4 products and declared that it has

11 done so. *Nothing* is counted in Audit Phase II.  The Auditor merely verifies, after the

12 fact, that ELCO has destroyed or disposed of the inventory of these products and, if

13 she finds un-disposed of inventory, reports that fact.

14       As a result, the plain language of the Settlement Agreement demonstrates that

15 no pre-disposition audit or accounting of inventory of Version 1-3 products is to

16 occur.  ELCO's understanding of the requirements Audit are correct, and DMF's

17 interpretation is unsupported.

18         **2.**      **The Settlement Agreement is limited to verification of**

19                **statements required by the Settlement Agreement itself**

20       In addition to advocating its unsupported position that the Settlement

21 Agreement requires an audit of Version 1-3 product inventory before its disposition,

22 DMF has also improperly requested that the Auditor verify statements ELCO made

23 during the pendency of the related utility patent litigation.  Nothing in the Settlement

24 Agreement permits the introduction of extra-contractual statements into the audit

25 process.  To the contrary, the express language of the Settlement Agreement provides

26 that the purpose of the audit is solely to verify statements ELCO made, or will make,

27 as a part of the settlement itself.

28

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS



1    The Settlement Agreement states that the purpose of the audit is to verify "█
2    ████████████████████████████████████████████████████
3    ████████████████████████████████████████████████████
4    ████████████████████████████████████." Taché Decl., Ex. 3 at § 6.
5    Audit Phase II is to "████████████████████████████████
6    ████████████████████████████████████████████████████
7    ████████████████████████████████████." *Id*. at § 7. Thus,
8    the Auditor's is only permitted to verify those specific representations.

9    ELCO anticipates that DMF will attempt to rely on language in the Settlement
10   Agreement providing that "████████████████████████████████
11   ████████████████████████████████████████████████████
12   ████████████████." *Id*. at § 6. DMF's interpretation ignores the scope of
13   the auditor's mandate. As set forth above, the sole purpose of the Audit is to confirm
14   representations ELCO made in the Settlement Agreement itself, or in the declaration
15   required under Section 7. Moreover, the plain language of the Settlement Agreement
16   provides that it is the *Auditor's judgment*, not DMF's that governs what information
17   ELCO is to provide. DMF's effort to force-feed the auditor information outside the
18   scope of the Settlement Agreement is in bad faith.

19   ELCO, therefore, respectfully requests that this Court enforce the Settlement
20   Agreement terms by determining as a matter of law that DMF's demand for an audit
21   of Version 1-3 product inventory and the use or verification of extra-contractual
22   statements as part of that audit violate the Settlement Agreement.

23   **C.    Extrinsic Evidence Supports ELCO's Interpretation of the**
24   **Settlement Agreement**

25   The plain language of the Settlement Agreement is clear, and any difficulty the
26   Auditor had in interpreting its provisions was caused solely by DMF's unreasonable
27   interpretations of the terms of Sections 6 and 7. Nevertheless, ELCO recognizes that,

28

14

BUCHALTER
A Professional Corporation
Irvine

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

because DMF disputes the terms of the Settlement Agreement, the Court may be required to review extrinsic evidence:

> Where contract terms are disputed, however, the trial court must provisionally consider extrinsic evidence which is relevant to show whether the contractual language is reasonably susceptible to the competing interpretations advanced by the parties. Extrinsic evidence may include the surrounding circumstances under which the parties entered into the contract, the object, nature and subject matter of the contract, and the subsequent conduct of the parties. "If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in ... interpreting the contract." Determining whether a contract provision is ambiguous is a question of law.

*Young v. Wideawake Death Row Ent. LLC*, 2011 WL 12565250, at \*4 (citations omitted).

"Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Ins. Co. v. Pisciotta*, 30 Cal. 3d 800, 807 (1982). However, if "two equally plausible interpretations of the language of a contract may be made[,]" then "parol evidence is admissible to aid in interpreting the agreement, thereby presenting a question of fact . . ." *Id*. Even this step is "solely a judicial function" if based solely on the words of the contract or where there is no material conflict in the extrinsic evidence. *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 395 (2008); *Parsons v. Bristol Dev. Co.*, 62 Cal. 2d 861, 865 (1965) ("The interpretation of a written instrument, even though it involves what might properly be called questions of fact . . . is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect").

Here, the extrinsic evidence supports ELCO's interpretation of the Settlement Agreement. Early drafts of the Settlement Agreement included an audit of inventory for Version 1-3 products. Tache Decl. ¶ 6. However, on or about January 18, 2021, the parties agreed that such an audit was not required. *Id*. On January 19, 2021, counsel for DMF circulated a draft of the settlement agreement that failed to account

15

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

1  for this change.  Taché Decl., Ex. 4.  In response, circulated a revised, redlined draft,
2  stating:

> Attached is a revised (redline) draft of the Settlement Agreement
> to pick up something missed in Section 6.  Since we no longer are
> conducting an audit of the remaining inventory of Version 1-3
> products prior to closing, the existing language was no longer
> accurate.  As such, we modified the language slightly to pick up
> this fact.

7  *Id.*, Ex. 5.

8        The redlined draft attached to ELCO's January 19, 2021 email removed any
9  requirement to audit the inventory of Version 1-3 products.  *Id.*, Ex. 6.  DMF accepted
10  ELCO's changes, and the executed version of the Settlement Agreement contains
11  language identical to that proposed by ELCO on January 19, 2021.  *See*, *id.*, Ex. 3 at
12  § 6.  Section 6 sets forth what is to be counted in Audit Phase I.  *Id.*  Section 7 sets
13  forth what occurs *after* Audit Phase 1 is completed.  *Id.* at § 7 ("█████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ███████████████████████████ (emphasis added)).

17        As explained above, Sections 6 and 7 cannot be read in isolation.  *Nationwide*
18  *Agribusiness Ins.*, 338 F. Supp. 3d at 1072 (E.D. Cal. 2018).  The content and timing
19  of Audit Phase II set forth in Section 7 is directly dependent on the content and
20  completion of Audit Phase I as set forth in Section 6.  DMF cannot now re-interpret
21  Section 7 to read-in a requirement that was expressly removed from Section 6 during
22  negotiations.  Thus, the Court should find that the parties did not intend for the
23  Auditor to conduct an audit of Version 1-3 inventory.

24     **D.**   **The Court May Sever Audit Phase II in Order to Preserve the**
25            **Agreement**

26        The Auditor, Julie Plat, concluded that the requirements of Audit Phase II were
27  so vague that she could not perform them.  While not binding on the parties, Ms.

28

16

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

Plat's conclusion is consistent with the Settlement Agreement.  Section 18 of the
Agreement states:



Taché Decl., Ex. 3, § 18.

Therefore, in the event the Court were to decide that Audit Phase II is so vague
or ambiguous, that the parties' intentions cannot be determined, the Court may sever
it completely and instruct the Auditor to complete Audit Phase I, over which no
dispute exists.

**E.**     **DMF's Obstruction Of the Audit Constitutes a Breach of the**
          **Agreement or, at a Minimum, a Breach of the Implied Covenant of**
          **Good Faith and Fair Dealing**

The Settlement Agreement provides that the Audit will be "                              
                              ."  Taché Decl., Ex. 3, § 6.  Aside from
participating in selecting the Auditor, DMF has no role in the Audit; all of the
obligations fall on ELCO.  *See*, *id*.  By attempting unilaterally to terminate the
parties' mutually agreed upon Auditor, and select a new auditor on its own, DMF has
breached its sole obligation under the Audit provisions of Sections 6 and 7 of the
Settlement Agreement.

Even if DMF's conduct is not construed as a breach of an express provision of
the Settlement Agreement, DMF is nevertheless in breach.  "Every contract includes
an implied covenant that neither party shall do anything which will have the effect of
destroying or injuring the right of the other party to receive the fruits of the contract."
*Realnetworks, Inc. v. DVD Copy Control Ass'n*, 641 F. Supp. 2d 913, 952 (N.D. Cal.
2009) (brackets omitted), *quoting Locke v. Warner Bros*., 57 Cal. App. 4th 354, 363

17

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

(1997). "The implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Schoolcraft v. Ross*, 81 Cal. App. 3d 75, 80 (1978); *accord Union/OSG, LLC v. Zagger*, No. CV101502GAFMANX, 2010 WL 11595887, at \*6–7 (C.D. Cal. May 6, 2010).

Here, the Settlement Agreement places the burden on ELCO to cooperate with the Auditor and timely complete the requirements of Sections 6 and 7 of the Settlement Agreement. DMF cannot frustrate ELCO's ability to perform its obligations under the Settlement Agreement by obstructing the Audit. But DMF, through its attempt to foist an unsupported interpretation of the Settlement Agreement on the Auditor, refusal to permit the Auditor to perform at least Audit Phase I, and purported unilateral termination of the Auditor, does exactly that. Emphasizing DMF's bad faith, DMF has attempted to blame ELCO for not going along with its improper efforts and argued that the delay DMF has caused is a basis to shift the cost of the Audit to ELCO.

Thus, the Court should find that DMF is in breach of the Settlement Agreement and order that DMF permit the parties' mutually selected Auditor, Julie Plat, to conduct Audit Phase I and Audit Phase II in accordance with the Court's interpretation of Sections 6 and 7 of the Settlement Agreement.

## IV.    **CONCLUSION**

For the foregoing reasons, ELCO respectfully requests that the Court find that:

(i)    Sections 6 and 7 of the Settlement Agreement do not require or permit an audit of inventory of Version 1-3 products,

(ii)    Sections 6 and 7 of the Settlement Agreement permit only the verification of ELCO's statements in the Settlement Agreement or the Declaration required by Section 7, and that DMF may not seek

18

Buchalter
A Professional Corporation
Irvine

DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT

Case No. 2:18-cv-007090-CAS-GJS

1                          verification of extra-contractual statements or provide such statements

2                          to the Auditor, and

3        (iii)       Order that DMF permit the parties' mutually selected Auditor, Julie Plat,

4                          to conduct the Audit in accordance with the Court's interpretation of

5                          Sections 6 and 7 of the Settlement Agreement.

6           In the alternative, pursuant to Section 18 of the Settlement Agreement, in the

7 event the Court cannot interpret the requirements of Sections 6 and 7 in a manner

8 reflecting the original intentions of the parties, ELCO requests that the Court strike

9 Audit Phase II from Section 7 of the Settlement Agreement and order that the parties'

10 mutually selected Auditor, Julie Plat, proceed as if that provision "had never been

11 contained" in the Settlement Agreement.

12 DATED:  March 29, 2021            BUCHALTER
                                           A Professional Corporation

13

14

15                                 By:  */s/ J. Rick Taché* _____

16                                   BUCHALTER
                                  A Professional Corporation

17                                   J. Rick Taché
                                  Kari L. Barnes

18                                   Roger L. Scott

19                                   Attorneys for Defendants

20                                   AMP Plus, Inc. doing business as ELCO
                                  Lighting and ELCO Lighting, Inc.

21

22

23

24

25

26

27

28

19

BUCHALTER
A Professional Corporation
Irvine

**DEFENDANTS' MOTION TO ENFORCE SETTLEMENT
AGREEMENT**

Case No. 2:18-cv-007090-CAS-GJS

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on March 29, 2021 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5-3.2.1.  Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.

*/s/ Roger L. Scott*
Roger L. Scott

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

**DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Case No. 2:18-cv-007090-CAS-GJS